IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BROWNE, et al., | No. C 03-05072 CRB |
|     Plaintiffs, | **MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| STEVEN GOSSETT, et al., | |
|     Defendants. | |

    Plaintiffs filed this action under 42 U.S.C. section 1983 against a number of defendants arising out of a search and seizure as part of a marijuana cultivation and possession investigation in Sonoma County. Plaintiffs allege defendants violated the First, Fourth and Fourteenth Amendments of the U.S. Constitution as well as the state constitution and state law. Now before the Court are defendants' motions for summary judgment as to all remaining federal claims and plaintiffs' cross-motion for summary judgment as to qualified immunity. After carefully considering the parties' briefs, and with the benefit of oral argument, the Court hereby GRANTS summary judgment for defendants as to all claims and DENIES plaintiffs' motion.

**BACKGROUND**

**I.    Procedural History**

    On July 14, 2004, the Court dismissed the federal defendants from the case and granted plaintiffs leave to amend their remaining causes of action in light of defendants'

previous motions to dismiss and within 30 days of a decision in Gonzales v. Raich, 125 S.Ct. 2195 (2005). Plaintiffs subsequently filed an amended complaint, and on October 7, 2005, the Court dismissed plaintiffs' federal due process claims as vague and conclusory and all federal claims against the County of Sonoma and the City of Arcata for failure to state a claim under Monell. The Court also dismissed the patient-only plaintiffs from the remaining federal claims and stayed the state law claims until further notice. The remaining defendants are Stephen Gossett and Andrea Salas, detectives in Sonoma County, and Bobby Lucas of the Arcata Police Department. The remaining plaintiffs are Jason Browne, Jason Snider and Brian Loucks. On November 18, 2005, defendants filed concurrent motions for summary judgment as to the remaining federal claims, which include Fourth Amendment claims for a wrongful search and seizure and excessive force, and First Amendment claims for a violation of plaintiff Browne's freedom of speech, right to petition, and access to the courts. The Court held an oral argument on January 27, 2006.

## II. Facts

In 2002, plaintiffs Jason Browne, Jason Snider, and Brian Loucks were operating a medical marijuana garden at 4335 Bodega Avenue in Petaluma, California. Second Amended Complaint ("SAC") ¶ 33. Defendants Salas and Gossett, narcotics detectives in Sonoma County, were initially tipped off to the Bodega Avenue property by a confidential informant ("CI") who alleged that marijuana cultivation was occurring on the property. Declaration of Andrea Salas, Ex. E. Defendants subsequently conducted an investigation, which included: (1) a visit to the property; (2) a review of the Sonoma County Assessor's Office records for the address; (3) a search of the license plates of vehicles located on the property, which revealed the identities of plaintiff Jason Browne and his father, Williams, a former plaintiff in this action; (4) a computerized criminal history check of the California Department of Justice records for Jason Browne, which revealed a line item for a 2001 incident in Arcata related to marijuana activities; (5) a request for information on any investigations that occurred in Humboldt County, which was produced by defendant Lucas; and (6) an inquiry with the Drug Enforcement Administration in San Francisco, which also

possessed information about at least some of the plaintiffs.  On June 12, 2002, Sonoma County Superior Court Judge Allan D. Hardcastle issued a search warrant based on a declaration from defendant Salas for PG&E subscriber and usage information at 4335 Bodega Avenue.

Defendant Salas obtained the PG&E records on June 21, 2002, a review of which she interpreted to reveal an unusually high electrical since activation at an "off-peak agricultural" rate three months prior.  County Defs.' Mot. at 5.  The account was opened in the name of Brian Loucks and listed as "dba LSB Gardens."  Upon submission of a second declaration outlining her belief that probable cause existed as to the use of the property for the indoor cultivation of marijuana, Sonoma County Superior Court Judge Rene A. Chouteau issued a second search warrant on June 27, 2002, permitting a search for "notations and photography of property and items thereon which tend to show that there is an indoor marijuana cultivation operation" on the 4.87 acre parcel at 4335 Bodega Avenue.  SAC ¶ 35.  This warrant permitted night entry onto the property but did not allow for entry into a structure.  A "sneak and peek" search of the property around midnight on July 2, 2002, revealed a motion sensor that protected the barn, and also confirmed that a fan acted intermittently within the structure and that bright lights could also be seen from outside the barn.  On July 12, 2002, upon a further declaration by defendant Salas outlining her reasons that there was probable cause to believe that marijuana cultivation was transpiring within a barn on the property, Sonoma County Superior Court Judge Dean Beaupre issued a third search warrant for the 4335 Bodega Avenue property that included permission to seize a number of items associated with marijuana cultivation and distribution. On July 18, 2002, detective Salas, along with detective Gossett, other representatives of the Sonoma County Sheriff's Department, agents from the DEA, and a representative from the Sonoma County District Attorney's office executed on the July 12 warrant.  Id. ¶ 37.  During the search, plaintiffs were handcuffed and questioned for several hours about the marijuana garden they found in the barn.  The representative from the District Attorney's office, upon reviewing authorizing documentation regarding the marijuana, determined on site that no prosecution would arise

3

out of the search. Federal agents seized some items from the property, which were held by the Sonoma County Sheriff's Department. On July 30, 2002, defendant Salas filed a Return to the search warrant in Superior Court, noting that no state officer seized any items during the search. See Salas Decl., Ex. G.

**LEGAL STANDARDS**

**I.   Summary Judgment**

A principle purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

**II.   Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law;"

defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotation marks and citation omitted).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." See Conn v. Gabbert, 526 U.S. 286, 290 (1999). The threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? See Saucier, 533 U.S. at 201. If no constitutional right would have been violated were the allegations established, there is no necessity for a further inquiry. See id. On the other hand, if a violation could be made out on the allegations, the next sequential step is to ask whether the right was clearly established. See id. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his conduct was lawful. See Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).

## DISCUSSION

Plaintiffs' remaining federal causes of actions are three section 1983 claims: A) a Fourth Amendment claim based on lack of probable cause for the search and a defective search warrant; B) a Fourth Amendment claim for use of excessive force during the search and seizure; and C) First Amendment claims of freedom of speech, right to petition, and access to the courts based on allegations that the search and seizure at issue was in retaliation for, and an effort to chill, plaintiffs' political speech concerning medical marijuana. The Sonoma County defendants (Salas and Gossett) and the Arcata defendant (Lucas) have filed summary judgment motions on all claims on the ground that no reasonable trier of fact could find a constitutional violation in this situation. In the alternative, defendants argue they at

least benefit from qualified immunity. Plaintiffs oppose summary judgment as to all claims and cross-move for summary judgment denying qualified immunity to defendants.

## I. Wrongful Search and Seizure

Plaintiffs present two primary theories of defendants' liability for violations of the Fourth (and Fourteenth) Amendment(s). First, plaintiffs assert that the warrant to search the Bodega property was improper because there was no probable cause that a crime was being committed there and because the warrant was defective. Second, plaintiffs contend that defendants misrepresented or omitted facts in the supporting affidavit for the search warrant and thereby violated the Fourth Amendment pursuant to Franks v. Delaware.

### A. Lack of Probable Cause/Defective Search Warrant

Under Illinois v. Gates, 462 U.S. 213 (1983), probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. "It is well-settled that the determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the search." United States v. Bishop, 264 F.3d 919, 924 (9th Cir. 2001) (citing Gates, 462 U.S. at 238). A magistrate judge may issue a warrant for a residence if a "reasonable nexus" exists between the residence and the evidence sought; that is, the magistrate "need only find that it would be reasonable to seek the evidence there." United States v. Chavez-Miranda, 306 F.3d 973, 978 (9th Cir. 2002) (citation omitted). In making this determination, the magistrate may consider a number of factors, including "the type of crime, the nature of the missing items, [and] the extent of the suspect's opportunity for concealment," United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970), but in the end the judge must make a "practical, common-sense" decision. Gates, 462 U.S. at 238.

#### 1. Defendants Salas and Gossett

Defendants Salas and Gossett commenced the investigation at issue here after receiving information from a confidential informant that included the address of the property, a map of the property, and the probable owner of the property where marijuana activities may

6

be occurring.[1] The Sheriff's Department deputies visited the property and confirmed the information provided by the informant, and also purported to "smell the odor of growing marijuana, hear a fan working and ... see lights working" in a barn-like structure. Id. at PC-2-PC-3. Defendants' subsequent investigation included the following: a review of plaintiffs' criminal history, including police reports from other investigations into activities related to the cultivation of marijuana in nearby counties; a review of PG&E records in the name of plaintiff Brian Loucks and obtained pursuant to the first warrant, which ultimately revealed an unusually high electrical usage; and a "sneak and peek" search around midnight on July 2, authorized by a second warrant, which confirmed that a light was emanating from the barn and fans were intermittently activating. Id. at PC-3A. Based on the totality of the circumstances outlined here, the declaration supporting the affidavit which persuasively explained the importance and context of this information, and the experience and training of the affiant, defendant Salas, the Court concludes that no reasonable juror could find that the magistrate judge's finding of probable cause to issue the warrant violated the Constitution.

Plaintiffs make several objections to a finding of probable cause, none of which, however, create a genuine dispute of a material issue. Plaintiffs first make a blanket argument that, given their status as medical patients and primary caregivers under the California Compassionate Use Act ("CUA"), defendants did not have probable cause to believe that illegal cultivation or possession of marijuana was taking place at the Bodega Avenue property.[2] Plaintiffs rely on People v. Mower, 28 Cal. 457 (Cal. 2002), yet they overstate its holding. Mower held that law enforcement must consider a suspect's status under the CUA in determining whether probable cause exists. Id. At 469. Yet Mower addresses probable cause in the context of an arrest, not merely a search warrant as exists

---

[1] Plaintiffs assert (but provide no supporting evidence) that the information from the informant was stale and unreliable. Yet this was contemplated by the issuing judge, who expressly confirmed that the informant had given the Sheriff's Department other tips that proved correct during the same time period, and added by hand a finding to that effect to the declaration. See Salas Decl., Ex. E at PC-2.

[2] Because a state-issued search warrant is at issue here, state law applies. Thus, the Supreme Court's decision in Gonzales v. Raich, 125 S.Ct. 2195 (2005), does not permit state law enforcement agents to ignore the requirements of the CUA.

1 here, and notes that where law enforcement has reason to believe that a patient or caregiver
2 does not possess or cultivate the substance "for the personal medical purposes of the patient,"
3 probable cause may exist.

4      The distinction between a search and an arrest or prosecution outlined in Mower is
5 vital to a proper disposition of this case. Law enforcement personnel may have probable
6 cause to believe that the cultivation and distribution of marijuana at a particular place even if,
7 as plaintiffs allege here, the suspects are known to be protected under the CUA. See People
8 v. Urziceanu, 132 Cal. App. 4th 747, (Cal Ct. App. 2005) (holding that the Compassionate
9 Use Act "prohibits qualified patients and their caregivers from joining together to pool
10 efforts to collectively cultivate and/or obtain medical marijuana for their own personal
11 medical uses"). Where, as here, law enforcement personnel have reason to believe that
12 unprotected activities are taking place–perhaps in addition to protected activities–probable
13 cause may exist despite the protections of the CUA. Once a suspect can document that her
14 marijuana-related activities are protected, the prosecution should then be terminated. That is
15 precisely what happened here.[3] After the officers conducted the search and interviewed
16 plaintiffs, the Sonoma County District Attorney's Office representative declared that
17 plaintiffs would not be arrested or prosecuted. Thus, the fact that plaintiffs were medical
18 patients and primary caregivers does not, without more, refute a proper finding of probable
19 cause to search the property.[4]

20      In addition, plaintiffs present a declaration from a "court-qualified cannabis expert"[5]
21 that disputes the assertion that defendants or others could smell an odor of marijuana

---

23     [3]Plaintiffs do not dispute that the state-level government officers did not seize any property of theirs. All seized property was taken by federal agents, who were previously
24 dismissed from this case.

25     [4]Plaintiffs further assert, also without supporting evidence, that the true address of the barn is 4333 Bodega Avenue, and that the incorrect address is cause to void the warrant. Yet
26 a PG&E electricity account was initiated by Brian Loucks for 4335 Bodega Avenue, and its usage was found to be unusually high relative to its previous use and the use of other normal
27 residences. The Court is therefore unpersuaded by this conclusory assertion.

28     [5]The Court assumes without deciding that plaintiffs' expert, Chris Conrad, is qualified as an expert on marijuana cultivation matters.

8

emanating from the barn on plaintiffs' property. Although plaintiffs' expert, Chris Conrad, could not say for certain that a detectable odor could *not* have emanated from the barn, the Court assumes *arguendo* that Mr. Conrad is correct. Therefore, in order to determine whether the dispute involves a material fact, the Court will purge that information from Salas' declaration and determine whether the magistrate judge would still have a substantial basis for concluding that probable cause exists without that information. See United States v. Grandstaff, 813 F.2d 1353 (9th Cir. 1987). The Court concludes that this information is superfluous to a finding of probable cause. A tip from a proven, reliable informant, combined with the lights, fan, and unusually high electrical bill, as well as prior marijuana-related investigations involving plaintiffs, satisfies the probable cause requirement.

### 2. Defendant Lucas

It is undisputed that defendant Lucas neither conducted the investigation regarding plaintiffs nor submitted a declaration or affidavit seeking a search warrant of plaintiffs' property. Therefore, Lucas cannot be subject to an assertion of lack of probable cause or a defective warrant. Plaintiffs' only Fourth Amendment claim against defendant Lucas lies under Franks v. Delaware.

### B.   Misrepresentation/Omission under Franks v. Delaware

In Franks v. Delaware, 438 U.S. 154 (1978), the Court held that when "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," the search warrant is void and improper. Franks, 438 U.S. at 155-156. The Ninth Circuit has subsequently extended Franks violations to omissions as well as misrepresentations. In United States v. Stanert, 762 F.2d 775 (9th Cir. 1985), *amended by* 769 F.2d 1410 (9th Cir. 1985), the court held that deliberate or reckless omissions of facts that mislead can negate a facial showing of probable cause. See Lombardi v. City of El Cajon, 117 F.3d 1117, 1122 (9th Cir. 1997). To do so requires a "substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." Stanert, 762 F.2d at 781.

9

### 1. Defendant Lucas

In order for defendant Lucas to be liable under a <u>Franks</u> claim, plaintiffs must submit admissible evidence supporting their allegation that he deliberately or recklessly omitted information from the investigations he turned over to defendants Salas and Gossett. Plaintiffs assert, without any evidence in support, essentially that Lucas did not inform Salas and Gossett about previous determinations in Arcata that the investigations conducted there revealed that plaintiffs' marijuana-related activities were permissible. In addition to the fatal flaw that plaintiffs do not submit evidence supporting their assertions, the record further indicates that plaintiffs' accusations are false.[6]

First, Salas and Gossett asked Lucas to send the reports pertaining to previous investigations regarding plaintiffs to which they were alerted by a match from the California Department of Justice. Plaintiffs do not assert that anything was omitted by Lucas from the investigation file. Second, the investigation reports submitted by plaintiffs include information pertaining to plaintiffs' status as medical marijuana patients under the CUA. <u>See</u> Declaration of William Simpich, Ex. 5 at CAS 0005. In fact, plaintiffs admit as much. <u>See</u> Pls. Opp. at *19 ("Officer Lucas' police report illustrates that he knew that all three of [the plaintiffs] were patients."). It is therefore apparent from the evidence that Lucas did *not* shield their status as caregivers from Salas and Gossett. Accordingly, the Court finds that defendant Lucas properly and truthfully responded to a request from another county's sheriff's department and that no reasonable juror could find Lucas liable under <u>Franks</u>.[7]

### 2. Defendants Salas and Gossett

Plaintiffs' <u>Franks</u> claim against Salas and Gossett revolves around two allegations. First, plaintiffs allege that the Salas declaration misrepresented that plaintiff Jason Browne

---

[6]Plaintiffs effectively admit that they have no admissible evidence to support this claim. <u>See</u> Pls.' Opp. at 14 ("The complaint makes it clear that Lucas provided highly misleading information to other law enforcement officers to a criminal investigation."). The Complaint, of course, does not include admissible evidence.

[7]Because the Court finds that there is no <u>Franks</u> claim against Lucas, the Court need not address whether a <u>Franks</u> claim can even lie against someone other than the affiant.

10

was previously "arrested" and Browne, Loucks and Snider were "co-defendants in a prior indoor cultivation of marijuana investigation," neither of which is true. See Salas Decl., Ex. E at PC-3, PC4. As defendants concede, plaintiffs were previously detained, not arrested, and they were never co-defendants because they were never prosecuted. Neither error, however, is sufficient to satisfy the Franks standard.

Defendants included the prior arrest information based on a reading of the California Department of Justice report on Jason Browne, which included the notation "ARR/DET/CITE." See Simpich Decl., Ex. 8. Below that line, the report further states "DET ONLY," which indicates he was only detained, not arrested. Id. To the extent that the distinction matters, the mistake was not intentional and did not exhibit a "reckless disregard for the truth;" rather, defendant Salas merely negligently included "arrest" instead of "detained." The same holds true for the use of the term "co-defendants," which is actually used–arguably improperly--to describe a "marijuana investigation," not a marijuana prosecution. Furthermore, the summation to defendant Salas' declaration reveals that the purpose of including this information was to alert the magistrate to "prior marijuana related *investigations*" involving plaintiffs, not that they were previously arrested or prosecuted. See Salas Decl, Ex. E at PC-6 (emphasis added). As a result, the Court does not find that these errors alter the probable cause calculus because neither term--"arrest" and "co-defendants"-- is necessary to a finding of probable cause.

Second, plaintiffs contend that the materials submitted to the magistrate judge omitted information that plaintiffs are medical patients or primary caregivers. Yet the declaration does include information regarding plaintiff Browne's involvement with cannabis clubs, including serving as a director of one. More importantly, to the extent that information is insufficient to properly alert the magistrate to his status as a patient and caregiver, the Court has already determined that that information alone is not sufficient to cast doubt over a finding of probable cause. See supra at I.A.1. Accordingly, plaintiffs' Franks claims fail and the Court finds that the magistrate judge's finding of probable cause was proper.

11

## II.   Excessive Force (Defendants Salas and Gossett only)

The standard for the lawful use of force by police under the Fourth Amendment is objective reasonableness.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  The reasonableness of the officer's use of force is to be judged from the perspective of a reasonable police officer on the scene, not after the fact.  See id. at 396-97.  The Ninth Circuit has recognized an individual constitutional right to protection "under certain narrowly defined circumstances."  United States v. Reese, 2 F.3d 870, 888 (9th Cir. 1993).  In particular, that right has been found when the state "assumes a 'special relationship' with a particular person by taking him into its custody, or when the state affirmatively creates the danger to which a person is exposed."  Id. (citing L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), *cert. denied,* 498 U.S. 938 (1990)).

It is undisputed that defendants were not part of the group of officers that awoke plaintiffs and handcuffed them during the search.  See Salas Decl. ¶ 19; Gossett Decl. ¶ 6. Plaintiffs further do not dispute that defendants Salas and Gossett only saw plaintiffs fully clothed and with handcuffs in front of them.  Plaintiffs contend that defendants heard plaintiff Browne's "complaints of great pain, yet failed to come to my aid."  Declaration of Jason Browne ¶ 16.  Other than this blanket assertion in a declaration, plaintiffs have proffered no evidence that plaintiff Browne was actually hurt or injured, such as a medical report, a declaration from a doctor, or other similar affidavit. Moreover, Browne's declaration avers that he complained of pain only when the handcuffs placed his arms behind him.  Id. ¶¶ 16, 17.  Yet he does not dispute the declarations of Salas and Gossett, which assert that they encountered Browne only after he was fully clothed with his handcuffs in front of him.  Finally, this is not one of the narrowly defined circumstances in which plaintiff benefits from either the special relationship exception or the danger exception to the general rule that police officers do not have an affirmative duty to aid.  Though detained during questioning, plaintiffs were not under the complete command or responsibility of law enforcement nor were they placed in danger; rather, they were handcuffed during a routine search and seizure.

12

In short, plaintiffs's excessive force claim fails as a matter of law for the following reasons: First, plaintiffs have not submitted sufficient evidence to place defendants Salas and Gossett on the scene when his allegations of excessive force took place. Second, plaintiffs have not submitted any evidence that excessive force was actually used against them. Finally, plaintiffs have not established that defendants had a duty to aid plaintiff while he was sitting in a chair with handcuffs on his wrists in front of his body. Accordingly, the Court finds that plaintiffs have failed to satisfy their burden of identifying a genuine dispute with regard to the excessive force claim. The Court therefore GRANTS defendants motion for summary judgment as to the Fourth Amendment causes of action.

### III.   First Amendment Claims (Plaintiff Browne only)

Plaintiffs allege that defendants violated the First Amendment by attempting to chill his advocacy of the legalization of medical marijuana by retaliating against him for his previous political speech.[8] Plaintiffs urge the Court to adopt the analysis articulated in Mendocino Env'tl. Ctr. v. County of Mendocino (II).[9] 192 F.3d 1283, 1300 (9th Cir. 1999) ("In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'"). If plaintiff's First Amendment rights have been chilled, an analysis under this standard focuses solely on whether defendants "*intended* to interfere with [plaintiff's] First Amendment rights." Id. (emphasis added). Intent to inhibit speech can be demonstrated either through direct or circumstantial evidence. Id. at 1301.

Plaintiff has submitted no evidence whatsoever supporting his assertion that his First Amendment rights were chilled or violated. Even if that were the case, however, plaintiff

---

[8] All parties concede that the three First Amendment claims–freedom of speech, right to petition, and right of access to courts–require a similar inquiry.

[9] The Court does not hold that this is the proper analysis but will assume so for the purposes of this motion.

13

fails to show that defendants *intended* to inhibit his First Amendment rights by conducting this investigation and search.

It is undisputed that defendants Salas and Gossett never knew or heard of plaintiff Browne before the investigation at issue.  See Salas Decl. ¶ 22; Gossett Decl. ¶ 8.  Plaintiff, however, claims that after reading the reports sent by Lucas, they "put together an affidavit designed to punish Mr. Brown by getting past the magistrate, ripping up the plants, hand (sic) the ripped-up plants to the DEA, and bury the rest of the property in storage." Pls. Opp. at 19.  This conclusory assertion is purely speculative and is presented to the Court without any supporting evidence.  Moreover, the Court has already found that defendants properly supplied the magistrate with probable cause to search the property.  Conclusory allegations about the impropriety of actions found to be lawful are insufficient to establish a genuine dispute of material fact in this instance.  Thus, the Court holds that no reasonable juror could find that defendants Salas and Gossett intended to violate plaintiff's First Amendment rights.

Similarly, plaintiff fails to present any nexus between defendant Lucas' activities and an alleged intent to chill plaintiff's speech.  Lucas merely responded fully, accurately, and lawfully to a request from detectives in another county.  Further, a closer look at the past interactions between Browne and Lucas do not reveal any hints of an intent to inhibit plaintiff's First Amendment rights.  As a result, these unsupported allegations of circumstantial evidence, even if accepted as true, do not give rise to an inference of an intent to chill plaintiff's speech.  In sum, plaintiff has provided nothing more than conclusory allegations, unsupported by evidence, that defendant Lucas' lawful actions were intended to chill his First Amendment rights.  The Court finds that no reasonable juror could arrive at such a conclusion.  As a result, the Court GRANTS defendants motion for summary judgment on the First Amendment claims.

**IV.   Qualified Immunity**

The Court's inquiry into qualified immunity ends with the first prong of the analysis: whether the defendants violated a constitutional right.  Because the Court has already

14

determined that defendants did not deprive plaintiffs of any constitutional rights, the Court hereby GRANTS qualified immunity to all defendants. Plaintiffs' partial motion for summary judgment is hereby DENIED.

## V.   State Law Claims

The Court previously stayed the following state law claims: (1) false imprisonment First Cause of Action) (2) First Amendment claims under the state constitution (Second through Fourth Causes of Action); (3) Assault and Battery (Sixth Cause of Action); (4) Civil Code ¶ 51.7 (Seventh Cause of Action); (5) Civil Code ¶ 52.1 (Eighth Cause of Action); (6) Civil Code ¶ 51 et seq (Unruh Act) (Ninth Cause of Action); (7) Right to privacy under Art. I, section 1 of California Constitution (Tenth Cause of Action); (8) Art. I, section 7 of the California Constitution and Health & Safety Code ¶ 11362.5; (9) Conversion (Fourteenth Cause of Action); (10) Intentional Infliction of Emotional Distress (Fifteenth Cause of Action); (11) Negligence (Sixteenth Cause of Action); (12) Art. III, section 3.5 of Cal. Constitution (Nineteenth Cause of Action); (13) Taxpayer's action (Twenty-First Cause of Action). The Court hereby DISMISSES without prejudice all remaining state claims for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, defendants motions for summary judgment are GRANTED. Plaintiffs' motion for partial summary judgment is DENIED. The remaining state law claims are DISMISSED without prejudice to pursuing those claims in the appropriate state court. Defendant Lucas' motion for sanctions is DENIED.

**IT IS SO ORDERED.**

Dated: January 27, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE